## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEROME GREEN** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 06-1657** |
| **WARDEN LYNN COOPER** | * | **SECTION: "D"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases.  Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE.**

Petitioner Jerome Green, a state prisoner incarcerated in the Avoyelles Correctional Center, Cottonport, Louisiana, seeks federal habeas corpus relief from his June 22, 2000, conviction by a jury of theft of goods valued over $500.00, a violation of LSA-R.S. 14:67.10[1]

---

[1]See State Record, Vol. 3 of 7, page 22, minute entry #22, dated June 22, 2000, and page 29, for a copy of the bill of information.

and of his July 31, 2001, adjudication as a second felony offender and sentence of ten years imprisonment at hard labor pursuant to LSA-R.S. 15:529.1.[2]

## Background, Procedural Summary and Statement of Fact[3]

The Jefferson Parish District Attorney filed a bill of information charging petitioner, Jerome Green, with theft of goods valued in excess of $500.00, in violation of LSA-R.S. 14:67.10.[4] The matter proceeded to trial in September of 1999. However, the six person jury was unable to reach a verdict. The second trial took place in June of 2000, at the conclusion of which petitioner was found guilty as charged. On July 28, 2000, the trial judge sentenced petitioner to ten years at hard labor, with credit for time served. Petitioner filed a notice of appeal on the same date.

The state subsequently filed a bill of information pursuant to LSA-R.S. 15:529.1, alleging that petitioner was a fourth felony offender. On January 31, 2001, in accordance with an agreement with the state, petitioner admitted his status as a second felony offender. The judge thereafter vacated petitioner's original sentence of ten years and resentenced him,

---

[2]See State Record, Vol. 3 of 7, page 100, minute entry #30, dated January 31, 2001.

[3]The background, procedural summary and statement of fact were taken from the opinion issued by the Louisiana Court of Appeal Fifth Circuit, **State v. Green,** 839 So.2d 286 (La. App. 5th Cir. 2003) and from review of the state record.

[4]The bill of information also charged Raymond Johnson with theft of goods. However, Johnson pled guilty.

2

as a second felony offender, to the agreed upon sentence of ten years imprisonment at hard labor.[5]

Prior to the lodging of the appellate record, petitioner filed his first application for post-conviction relief (PCR) in the trial court on March 22, 2002.[6]  The issues raised were inadmissible hearsay, prejudicial remarks and insufficient evidence.  On May 6, 2002, the trial court denied the application for PCR as procedurally barred, citing **State v. Gaines,** 701 So.2d 688 (La. App. 4th Cir. 9/17/97).[7]  However, the appellate record was not lodged until August 27, 2002.[8]  Petitioner, via counsel, filed his appellate brief on October 28, 2002.[9]  The conviction and sentence were affirmed on January 28, 2003, by the Louisiana Court of Appeal, Fifth Circuit.[10]

Petitioner's application for writ of certiorari and/or review to the Louisiana Supreme Court was post-marked February 27, 2003, and it was received and filed on March 25, 2003,

---

[5]See State Record, Vol. 3 of 7, page 100, minute entry #30, dated January 31, 2001.

[6]See State Record, Vol. 3, pp. 102-109.

[7]See State Record, Vol. 3 of 7, page 119 for a copy of the ruling.

[8]The court reporter filed several motions for extension of time to lodge appeal transcripts. See State Record, Vol. 3 of 7, page 94, Oct. 10, 2000; page 95, Dec. 4, 2004; page 101, Mar. 8, 2001.

[9]See State Record, Vol. 1 of 7, and Vol. 5 of 7 for a copies of the Original Brief of Appellant.  **State v. Green,** No. 02-KA-883, Court of Appeal, Fifth Circuit, State of Louisiana. The issues raised were insufficient evidence regarding intent and insufficient evidence regarding proving the value of stolen items.

[10]**State v. Green,** 839 So.2d 286 (La. App. 5th Cir. 2003).

3

under No. 2003-KO-848.[11]  The application was denied on October 31, 2003.[12]  Petitioner

filed his second application for PCR in the trial court on June 28, 2004.[13]  Petitioner signed

his affidavit in support of his PCR application on June 22, 2004.  The trial court denied the

application for PCR on July 6, 2004.[14]  Petitioner sought relief from the Louisiana Court of

Appeal Fifth Circuit, filing a writ application on November 4, 2004 which was denied on

November 9, 2004.[15]

On December 30, 2004, petitioner filed a writ in the Louisiana Supreme Court under

No. 2004-KH-3210.[16]  The writ was post-marked December 2, 2004, and it contained the

---

[11]See State Record, Vol. 1 of 7, for a copy of the letter from the Clerk of Court, Louisiana Supreme Court.  Also see State Record Vol. 6 of 7 for a copy of petitioner's brief, page 6, concerning the following issues raised: misconduct of prosecutor; ineffective assistance of counsel; insufficient evidence; and, insufficient value of and identification of stolen merchandise.

[12]**State v. Green,** 857 So.2d 474, 2003-KO-0848 (La. 10/31/03).

[13]See State Record, Vol. 2 of 7.  The issues raised were: defective bill of information; insufficient evidence and suggestive identification of the items stolen.

[14]See State Record, Vol. 2 of 7, for a copy of the trial court's ruling.  The court denied the first claim on the merits.  The second claim was denied as repetitive and res judicata as it had been addressed on direct appeal.  The third issue was denied as procedurally barred, as petitioner should have raised the issue on pre-trial motions and/or on direct appeal.

[15]See State Record, Vol. 2 of 7 for a copy of the ruling.  **State v. Green,** No. 04-KH-1304, (La. App. 5th Cir. Nov. 9, 2004).  The court found no error in the trial court's ruling of July 6, 2006.

[16]See State Record, Vol. 2 of 7, for a copy of the December 30, 2004, letter from the Clerk of the Louisiana Supreme Court.

same issues raised in the Louisiana Fifth Circuit.  The Louisiana Supreme Court denied the writ on November 29, 2005.[17]

Petitioner filed the subject federal petition for a writ of habeas corpus on January 31, 2006, the date he signed his certificate of service.[18]  Petitioner brings the following claims: defective bill of information; insufficient evidence; and, that the identification of the stolen goods was defective.

In response, the State argues that the petition should be dismissed because of the following: that the petition was untimely filed; that the petition is mixed as it contains one exhausted claim and two unexhausted claims; and, that the second and third claims were procedurally denied in the state court based upon independent and adequate state grounds. Finally, although the state concedes that the first claim has been exhausted, it argues that the first claim should be denied on the merits.

---

[17]**State ex rel. Jerome Green v. State of Louisiana,** 916 So. 155 (La. 11/29/05).

[18]This January 31, 2006, filing date was ascertained via the Court's use of the federal "mailbox rule."  Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  **Cooper v. Brookshire**, 70 F.3d 377, 379 (5th Cir. 1995).  Generally, the date a prisoner signs his petition, is presumed to be the date he delivered it to prison officials for mailing.  *See* **Colarte v. LeBlanc**, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his *habeas corpus* application over to prison officials for delivery to this Court on the date he signed his application); **Magee v. Cain**, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); **Punch v. State**, 1999 WL 56279, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

## **Statement of Fact**

On December 12, 1998, Jeff Magee went to pick up a prescription from the Rite-Aid on Metairie Road in Jefferson Parish. While there, he noticed two black men, subsequently identified as Jerome Green and Raymond Johnson, who were inside the store and "looking suspicious." Fearing that they were planning to rob the store, Mr. Magee purchased his prescription and left. He walked to the parking lot, got inside his truck, and continued to observe the two men's actions. Mr. Magee saw defendant and the other man exit the store, one after the other, with baskets full of merchandise, particularly baby diapers and bottles of liquor. As each suspect left the store, he walked to a gold Cadillac which was parked several stores down from Rite-Aid, and placed the merchandise in the back of the car. The two suspects took turns, each carrying merchandise in hand baskets from the store, and placing it in the car. After a total of approximately four such trips, defendant exited the store for the last time and got into the driver's seat of the vehicle.

Based on his observations, Mr. Magee called 911. When the police arrived, they secured defendant and then stopped the second perpetrator, Raymond Johnson, as he was coming out of the store with a basket full of liquor. Neither of the two individuals could produce a receipt for the merchandise. Also, during the course of their investigation, the officers ascertained that the Cadillac in which the merchandise was being placed, was owned by defendant.

6

After the suspects were secure, the police retrieved the merchandise consisting of numerous bottles of liquor and packages of diapers from the back of defendant's vehicle. Ms. Melissa Howard, the store's assistant manager, identified the merchandise, and then scanned the items for prices.  Ms. Howard determined that the value of the items was $741.85.  The two men were thereafter arrested for theft of goods over $500.00.

### Time Bar

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications.  The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d)(1), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

Court and made retroactively applicable to cases on
collateral review; or
        (D) the date on which the factual predicate of the
claim or claims presented could have been discovered
through the exercise of due diligence.

Reviewing petitioner's federal application, the Court finds that subsections (B), (C) and (D) are clearly inapplicable.

Accordingly, subsection (A) applies in the instant case. As noted, that subsection provides that a petitioner's federal application must be filed within one (1) year of the date on which the petitioner's underlying criminal judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. In the instant case, on October 31, 2003, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction and sentence.[19] Therefore, under Section 2244(d)(1)(A), petitioner's underlying criminal judgment became "final" ninety (90) days later, i.e., on January 29, 2004, when his period expired for seeking a writ of certiorari from the United States Supreme Court. *See* **Roberts v. Cockrell,** 319 F.3d 690, 694 (5th Cir. 2003); **Ott v. Johnson,** 192 F.3d 510, 513 (5th Cir. 1999); **Chester v. Cain,** Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); *see also* U.S. Sup. Ct. R. 13(1). Accordingly, his one-year period for seeking federal *habeas corpus* relief commenced on that date (January 29, 2004) and expired one

---

[19]Petitioner did not file for a writ of certiorari in the United States Supreme Court but instead sought state post-conviction relief on June 28, 2004. (See footnote No. 12 of this report.)

year later, i.e. on January 29, 2005, unless that deadline was extended through tolling.  As previously mentioned, petitioner did not file the subject federal application for habeas corpus relief until January 31, 2006.

The Court first considers statutory tolling.  The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  Title 28, United States Code, Section 2244(d)(2).  Petitioner filed his first application for PCR in the state district court on March 22, 2002, prior to the lodging of the appellate transcript and prior to filing his direct appeal.[20]  The PCR was denied on May 6, 2002, as procedurally barred as an appeal was still pending.[21]  Since the first PCR was filed prior to the direct appeal, its filing cannot toll the federal limitation period, as the limitations period did not commence until after the conviction became final in the state courts. See 28 U.S.C. 2244(d)(1)(A).[22]

---

[20]See Vol. 1, p. 102 for a copy of petitioner's first PCR application.

[21]See Vol. 3 at p. 119 for a copy of this decision.

[22]Petitioner filed his notice of appeal on July 28, 2000. The appellate record was not lodged until August 27, 2002 and petitioner did not file his direct appellate brief until October 28, 2002, more than two years after the notice of appeal had been filed. The state argues that the limitations period should not be tolled for the time between the filing of the notice of appeal and the filing of the appeal brief because the delay in the lodging of the appeal transcript was caused by petitioner's failure to pay the costs of the transcript.  However, the state concedes that petitioner timely filed his motion for appeal pursuant to La. C.Cr. P. Art. 914.  Moreover, the state claims that the extensions of the return date by the court reporter were not filed within the time allowed by state law.  If the state made the same argument before the state appellate court,

The court next considers the effect of petitioner's second application for PCR filed on June 28, 2004 and signed on June 22, 2004.[23] As of the date of filing of this application, June 22, 2004, petitioner had allowed 144 days to run against his one year limitations period. The PCR was denied on July 6, 2004. Under state law, petitioner had thirty (30) days or until August 5, 2004, to file a writ in the Louisiana Fifth Circuit. He did not file until November 4, 2004, thereby allowing ninety (90) additional days to lapse before a state PCR application or other collateral review application attacking his conviction or sentence was filed. Petitioner timely filed his writ to Louisiana Supreme Court on December 2, 2004, the day it was signed and postmarked. The writ was denied on November 29, 2005.[24] Petitioner filed the subject federal application for habeas corpus on January 31, 2006, thus allowing another sixty-two (62) days to lapse. Therefore, petitioner only allowed a total of 296 out

it apparently was rejected. The Louisiana Fifth Circuit evidently considered the October 28, 2002, filing of the direct appeal to be timely filed. Review of the state record indicates that the Louisiana Fifth Circuit ordered petitioner's attorney to file petitioner's brief on or before October 28, 2002 and petitioner complied with that directive. Therefore, the two-year plus delay does not appear to have rendered the direct appeal untimely under Louisiana law.

[23] In **Causey v. Cain,** 450 F.3d 601, 604-607 (5th Cir. 2006), the Fifth Circuit decreed that the mailbox rule be employed in ascertaining the filing date of a prisoner's Louisiana state court pleadings in the context of determining the timeliness of his federal habeas corpus application. Under the "prison mailbox rule", a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. **Cooper v. Brookshire,** 70 F.3d 377, 379 (5th Cir. 1995). The June 22, 2004, filing date, therefore, is considered to be the date petitioner's PCR was filed in the state district court.

[24] **State ex rel. Green v. State**, 916 So.2d 155 (La. 11/29/05).

of the 365 day limitation period to lapse without a properly filed application for state PCR or collateral review pending.  Petitioner's federal petition was, therefore, timely filed.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28, United States Code, Section 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2).  **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Title 28, United States Code, Section 2254(d)(1).  The United States Supreme Court has noted:

> Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is

> on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in **Williams [v. Taylor,** 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

**Bell v. Cone,** 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Title 28, United States Code, Section 2254(d)(2); *see also* **Hill,** 210 F.3d at 485; Title 28, United States Code, Section 2254(e)(1).

**Defective Bill of Information**
**1ˢᵗ Claim**

Petitioner argues that the bill of information was constitutionally defective because it contained the phrase "with force of arms."  Thus, petitioner contends that the phrase with force of arms suggested to the jury that the theft had been committed with use of force and/or while being armed to some degree, or with the use of some other form of extraordinary violence.  The bill of information charged as follows, in pertinent part:

> **PAUL D. CONNICK, JR.,** District Attorney of the Twenty-Fourth Judicial District Court of the State of Louisiana, who, in the name and by the authority of the said State, prosecutes in its behalf, through the undersigned assistant district attorney, comes into the Twenty-Fourth Judicial District Court of the State of Louisiana, in and for the **PARISH OF JEFFERSON** and gives the said Court here to understand and be informed that one
>
> JEROME GREEN

12

RAYMOND JOHNSON

late of the Parish aforesaid, on or about the 12th day of December in the year of our Lord, One Thousand Nine hundred and Ninety-Eight **with force of arms,** (emphasis/bold added)in the Parish aforesaid, and within the jurisdiction of the Twenty-Fourth Judicial District Court of Louisiana, in and for the Parish aforesaid, violated R.S. 14:67.10 in that they did commit a theft of goods, valued at over $500 from Rite Aid, contrary to the form and Statute of the State of Louisiana, and against the peace and dignity of the State.

(See State Record, Vol. 3 of 7, page 29, for a copy or the bill of information.)

To the extent petitioner is challenging the sufficiency of the bill of information, this court need not consider such an issue on habeas corpus review. **Billard v. Warden**, 2006 WL 3533078 (E.D. La., Dec. 7, 2006)(J. Lemmon).  The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the charging instrument "is so defective that the convicting court had no jurisdiction." **Morlett v. Lynaugh**, 851 F.2d 1521, 1523 (5th Cir. 1988).  For a charging instrument to be fatally defective, no circumstances can exist under which a valid conviction could result from facts provable under the instrument.  Whether an indictment is defective can "be determined only by looking to the law of the state where the indictment was issued." **Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir.1985) (citation and quotations omitted); **Morlett,** 851 F.2d  at 1523, **Lockett v. Anderson**, 230 F.3d 695, 702 (5th Cir.2000).

Resolution of such an issue on federal habeas review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case...." **Id.** (quotation and citations omitted); **McKay v. Collins**, 12 F.3d 66, 68-69 (5th Cir.1994) (where state courts held that indictment is sufficient under state law, federal court need not address that issue on habeas review). Review of the state record shows that the claim was presented to the state district court on PCR and the court ruled: .... "upon review, the Bill of Information properly sets forth the elements of La. R.S. 14:67:10, relative to theft of goods. Defendant's interpretation of "force of arms" is misplaced. Thus, the defendant is not entitled to the relief sought." (See State Record, Vol. 2 of 7 for copy of the Order dated July 6, 2004). The Louisiana Fifth Circuit found no error in the trial court's ruling.[25] The Louisiana Supreme Court denied relief on November 29, 2005.[26]

Petitioner's claim of a defective or insufficient indictment does not present a federal question for review in habeas corpus. It is well established that federal habeas review is limited to questions of a constitutional dimension. *See generally* **Jernigan v. Collins**, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); **Castillo v. Johnson**, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S.

---

[25]See footnote #14 of this Report.

[26]See footnote #17 of this Report.

979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  Arguments that a trial court violated state law "do not constitute an independent basis for federal habeas relief."  **Narvaiz v. Johnson**, 134 F.3d 688, 695 (5th Cir.), *cert. denied*, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 731 (1988), *citing* **Estelle v. McGuire**, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (quotation omitted).

Moreover, to the extent petitioner is claiming that the added phrase "of force of arms" in the bill of information was incorrect under the law, he fails to establish any prejudice from the inclusion of this phrase.  Review of the pertinent jury charges[27] shows the trial court instructed the jury as follows concerning the bill of information:

> A bill of information is nothing more than a written, formal accusation against a defendant charging him with a crime.  You are not to consider the bill of information as evidence against the defendant.  The mere filing of a bill of information creates no inference whatsoever that the defendant is guilty.

(See State Record, Vol. 3 of 7, Jury Charges page 51.)

The trial court also clearly charged the jury relative to the definition and elements required to be proven to find petitioner guilty as charged as follows, in pertinent part:

> The defendant is charged with theft of property with a value of $500 or more belonging to Rite Aid.

---

[27]See State Record, Vol. 3 of 7, pages 48-62 for a copy of the court's jury charges.

15

Theft is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations.

"Anything of value" must be given the broadest possible meaning, including any conceivable thing of the slightest value. (The phrase must be construed in the broad popular sense of the phrase, not necessarily synonymous with the legal term goods.)

A specific intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential.  Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribes criminal consequences to follow his act or failure to act.

Thus, in order to find the defendant guilty as charged, you must find:

1)      that the defendant misappropriated or took property belonging to Rite Aid; and

2)      that the value of the property was over $500; and

3)      that the misappropriation or taking was without the consent of Rite Aid (or was by means of fraudulent conduct, practices, or representation); and

4)      that the defendant had a specific intent to deprive permanently the owner of his property.

(See State Record, Vol. 3 of 7, Jury Charges, page 55.)  In light of the jury charges provided, this claim is meritless.

<u>**Procedural Default**</u>

**Second Claim - Insufficient evidence of ownership of stolen goods.**

**Third Claim    - Suggestive identification of stolen goods.**

Petitioner argues that the evidence presented at trial was insufficient to convict him of theft of goods valued at $500.00 or more because the ownership of the goods was not established to have been owned by Rite-Aid.  Particularly, petitioner claims there was no evidence presented which verified that the items found in his vehicle belonged to Rite-Aid. In the third claim petitioner argues that the identification of the items was so suggestive that it bordered "on the verge of no identification".[28]

The State argues that the second and third claims should be denied as procedurally defaulted.  Specifically, the State contends that the second claim (insufficient evidence of ownership of stole goods) was procedurally denied by the state court as res judicata and repetitive and the third claim, suggestive identification of stolen goods, was denied pursuant to La.C.Cr.P. art. 930.4 due to petitioner's failure to raise the claim on direct appeal. Generally a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment.  **Amos v. Scott,** 61 F.3d 333, 338 (5th Cir.), <u>cert</u>. <u>denied,</u> 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), citing **Harris**

---

[28] See p. 7 of petitioner's memorandum, Rec. Doc. 1.

**v. Reed,** 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. **Amos,** 61 F.3d at 338 (citations omitted). As explained in **Coleman v. Thompson,** 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991): "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity... . Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

As noted earlier, after reviewing petitioner's claim of insufficient evidence of ownership of the goods in petitioner's second PCR application, the Louisiana trial court denied the claim as repetitive and as barred by the doctrine of res judicata as it had already been addressed on direct appeal. The trial court's decision was subsequently upheld by the Louisiana Court of Appeal Fifth Circuit and by the Louisiana Supreme Court. Although the State claims that this claim is barred from federal review, that position is incorrect. The U.S. Fifth Circuit has held that a state post-conviction court's dismissal of a claim on the basis of La. C. Cr. P. art. 930.4(A), i.e., that the claim had been fully litigated on appeal, was "not a procedural bar in the traditional sense" and did not exclude the federal district court from addressing the merits of the claim. **Bennett v. Whitley**, 41 F.3d 1581, 1583 (5ᵗʰ Cir. 1994).

See also **Guillory v. Cain**, 250 Fed. Appx. 95 (5ᵗʰ Cir. 2007)[29]  As explained in **Bennett**, if

the last state court to reach the issue being litigated reviewed the issue on the merits, the

claim is not barred from federal review.  **Bennett**, 41 F.3d at 1282. In this case, Green's

claim of insufficient evidence of ownership of the stolen goods was addressed on the merits

by the highest state court albeit on direct appeal rather than during post-conviction

proceedings. Thus, Green's second claim, challenging the sufficiency of the evidence of

ownership of the stolen goods by Rite-Aid, may also be addressed on the merits by this court.

On direct appeal, Green challenged the sufficiency of the evidence used to convict

him. Specifically, he alleged that the state failed to prove that he had the specific intent to

commit the charged offense; that the state failed to prove the recovered goods were from the

Rite-Aid store; and, that the state failed to prove the value of the goods taken.  The state

appellate court addressed each of these claims in turn, applying the appropriate U.S. Supreme

Court standard as set forth in **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d

560  (1979).[30]    Before  this  court,  the  relevant  analysis  is  the  state  appellate  court's

---

[29] **Guillory** is an unpublished opinion which recently relied on **Bennett** for the same proposition.

[30]The issue of sufficiency of evidence is a mixed question of law and fact. **Taylor v. Cain**, 2008 WL 4186883 (E.D.La. 9/10/08)(J. Vance); *see also* **Lowery v. Collins**, 988 F.2d 1364 (5ᵗʰ Cir. 1993)( sufficiency of evidence is either a question of law or mixed question of fact and law).  Therefore, this court must defer to the state court's decision rejecting petitioner's claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." **Taylor**, 2008 WL 4186883 *14.

determination regarding the ownership of the stolen goods by Rite-Aid. This portion of the

analysis and all relevant factual findings are repeated herein as follows:

> The defendant in this case was charged with theft of goods valued over $500. That offense is defined in LSA-R.S. 14:67.10, which provides, in pertinent part, as follows:
>
> > A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred....
> >
> > B. (1) Whoever commits the crime of theft of goods when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned with or without hard labor, for not more than ten years or may be fined not more than three thousand dollars, or both.
>
> Therefore, in order to establish defendant's guilt for this crime, the state was required to prove beyond a reasonable doubt: (1) that defendant misappropriated or took; (2) a thing of value; (3) which is held for sale by a merchant; (4) either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations; and (5) that defendant had the intent to deprive the merchant permanently of that which is the subject of the misappropriation or taking. **State v. Hampton**, 00-1002 (La.App. 5 Cir. 1/23/01), 782 So.2d 1045, 1051-51; **State v. Coleman**, 02-345 (La.App. 5 Cir. 9/18/02), 829 So.2d 468, 471.
>
> . . . . .
>
> The eyewitness to the incident, Mr. Magee, who did not see the actual taking but did see the actions of the two men immediately before and after the taking, testified at the trial. Mr. Magee described the suspicious activities of Green and Johnson inside the store. In this regard, Mr. Magee observed one of the

suspects standing on his toes, holding a bottle of liquor, and peering over the counter at the cashier. During this time, the other suspect was stationed on the last aisle of the store, also with his attention affixed on the cashier. The last thing Mr. Magee saw before exiting the store was the two men, crouched down in the last aisle of the store, intently watching the cashier. As Mr. Magee sat in his truck, with an unobstructed view of the front of the store, he saw the men, taking turns, exit the store with baskets filled with merchandise. Each would then walk to the Cadillac and place the items in the back of the vehicle. After a total of approximately four such trips, which were observed by the eyewitness, Green exited the store for the last time and sat in the driver's seat of his Cadillac, apparently awaiting the arrival of Johnson. Magee identified Green and Johnson at the scene.

Following the arrest of Green and Johnson, the items, which the eyewitness had recognized during the theft as being diapers and liquor taken from the store, were found in the back of the Cadillac. Neither Green nor Johnson had receipts for the items. The items were returned to the store for identification by the store's assistant manager. A check of the computer records indicated the items had not been sold. A check of the store shelves indicated that similar items were missing.

Mr. Magee, who had identified Green and Johnson on the day of the theft, also positively identified Green at trial as one of the men he saw leaving the store with items from the store and placing them in his car.

. . .

The record reflects that Mr. Magee observed defendant as he exited the store with what he described to be "Pampers and liquor" and these items were deposited into the back of defendant's vehicle. After Green's arrest, officers found Pampers and liquor in the back of Green's Cadillac. These items were returned to the store and identified as being compatible with items the store would sell. Neither defendant had receipts for the items. Ms. Howard, the store's assistant manager, testified that the store computer records indicated the items had not been sold. She also testified that a check of the shelf where such items were housed indicated that similar items were missing. Under these circumstances, a jury could have reasonably concluded that the items seen by Mr. Magee being taken from the store by defendant and later found in the back of defendant's vehicle were the same items that had previously been the store's merchandise.

**State v. Green**, 839 So.2d 286, 288-290 (La. App. 5th Cir. 2003).

The court has reviewed the pertinent testimony of Mr. Jeff Magee, the eyewitness,[31] as well as of the assistant manager of the Rite-Aid, Ms. Melissa Howard.[32] The facts as found by the Louisiana Court of Appeal, Fifth Circuit, are a reasonable determination of the facts as established by the evidence at trial.  Moreover, it is evident that the jury believed the testimony of the eyewitness and of the store assistant manager and such credibility determinations will not be upset on federal habeas review.  **Taylor v. Scott**, 48 F.3d 529 (5th Cir. 1995). A reviewing *habeas* court does not revisit determinations of credibility for such issues are properly left to the province of the jury.  **Pemberton v. Collins**, 991 F.2d 1218, 1225 (5th Cir. 1993), cert. denied, 114 S.Ct. 637, 126 L.Ed. 2d 596 (1993).  Based upon a review of the evidence which was before the jury, this court cannot say that the state court's determination that the jury could have concluded that the items found in the back of Green's vehicle were the same items taken from Rite-Aid "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. Section 2254(d)(1).

---

[31]Jeff Magee's direct testimony can be found in State Rec. Vol. 4, Trial Transcript dated June 22, 2000, at pp. 10-15, his cross-examination at pp. 15-25 and his redirect at pp. 25-26.

[32]Melissa Howard's direct testimony can be found in State Rec. Vol. 5, Trial Transcript dated June 22, 2000, at pp. 46-49, her cross-examination at pp. 49-58 and her redirect at pp. 58-60.

Green's third claim, i.e., that there was a suggestive identification of the stolen goods, was denied as procedurally barred by the state courts because petitioner should have raised the claim on pretrial motions and/or on appeal, is based upon La. C.Cr. P. art. 930.4(B) and (C). [33] The State argues that this court is, therefore, prevented from reviewing the claim under the procedural default doctrine.

Procedural default which occurs because a state prisoner failed to comply with La. C.Cr. P. art. 930.4(B) and/or (C) "will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar." **Simmons v. Cain**, 2008 WL 2185422 *3 (May 20, 2008)(Berrigan, J.), citing **Harris v. Reed**, 489 U.S. 255, 260, 262 (1989), **Glover v. Cain**, 128 F.3d 900, 902 (5th Cir. 1997). If the last state court reviewing the matter "summarily affirms a lower court judgment denying relief, the federal court looks to the last explained decision to determine whether it was decided primarily upon a state procedural bar." **Corwin v. Johnson**, 150 F.3d 467, 473 (5th Cir. 1998), citing **Ylst v. Nunnemaker**, 501 U.S. 797, 802-04 and n.3, 111 S.Ct. 2590, 2595 and n.3, 115 L.Ed.2d 706 (1991).

---

[33]See footnotes 13 and 14 of this Report.

On July 6, 2004, the trial court denied petitioner's application for PCR and stated the

following, in pertinent part:

> Turning to assignment of error number three, the defendant
> avers that the identification of the items involved was highly
> suggestive due to the witness being allowed to view the contents
> of the defendant's vehicle.  The defendant's claim should have
> been raised in pre-trial motions and/or on appeal.  The defendant
> is procedurally barred from raising this claim on post-conviction
> application and has not explained why he failed to raise this
> particular claim in an earlier proceeding.  **State ex rel. Kenneth
> W. Rice v. State of Louisiana,** 749 So.2d 650, [99-KH-
> 0496](La. 1999).  Thus, the defendant is not entitled to the relief
> sought.

(See State Record, Vol. 2 of 7 for a copy of the trial court's Order dated July 6, 2004).

The higher state courts which reviewed this decision summarily agreed with the trial court's

order.

Based upon the record before the court, it is clear that petitioner's claim of suggestive

identification of the stolen goods was denied by the state courts based upon a procedural bar,

specifically  La. C.Cr. P. art. 930.4(B) and (C).[34]  It is additionally correct that La. C.Cr. P.

art. 930.4(B) and (C) are independent and adequate procedural bars.  See **Simmons** at *4.

Therefore, petitioner's suggestive identification of the stolen goods claim is procedurally

barred from review unless petitioner can show "cause" for his procedural default and

---

[34]Although the state court opinion did not designate the procedural articles not complied
with, La. C.Cr. P. art. 930.4 (B) and (C) are the codal articles which require a post-conviction
applicant to have first raised the claim "in the proceedings leading to conviction" or "on appeal".

prejudice which would result from this court's failure to review his claim. To establish "cause", Green must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule". **Murray v. Carrier**, 477 U.S. 478, 488 (1986). "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." **Hogue v. Johnson**, 131 F.3d 466, 497 (5th Cir. 1997), citing **Engle v. Isaac**, 456 U.S. 107, 134 n. 43 (1982). In the instant matter, petitioner has not demonstrated the requisite cause, thus the instant claims are procedurally barred unless he can show that a fundamental miscarriage of justice would result.  In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  **Finley v. Johnson,** 243 F.3d 215, 200 (5th Cir. 2001) *(citations omitted).* Petitioner, in this instance, has made no such showing.  Accordingly, the suggestive identification of the stolen goods claim should be dismissed based upon procedural default.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal habeas corpus relief filed by Jerome Green be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  **Douglass v. United Services Auto. Ass'n**,

79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___24th___ day of _____October_____, 2008.

_____

LOUIS MOORE, JR.

United States Magistrate Judge

26